# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO.

ADIDAS AG, ADIDAS INTERNATIONAL MARKETING B.V.,
ADIDAS AMERICA, INC., REEBOK INTERNATIONAL LIMITED,
and REEBOK INTERNATIONAL LTD.,

        Plaintiffs,

vs.

ADIDASCITYCUP.COM, ABBIGLIAMENTOADIDAS.COM,
ADIDASALESUOMI.COM, ADIDASCANADASALE.COM,
ADIDASCIPOOLCSON.COM, ADIDASCONTINENTAL.CO.UK,
ADIDASDROSE8.COM, ADIDASFOOTWEARSALEUK.CO.UK,
ADIDAS-FRANCE.TOP, ADIDASGALAXY.COM,
ADIDASGAZELLESUOMI.COM, ADIDASGAZELLETILBUD.COM,
ADIDASHAMBURG.COM, ADIDASHERE.COM,
ADIDASHUNGARY.COM, ADIDASIADIDASROMANIA.COM,
ADIDASINIKE2019.COM, ADIDASIREEBOKPUMP.COM,
ADIDASIREEBOKROMANIA.COM, ADIDASIRELANDSALE.COM,
ADIDAS-ITALIA.CLUB, ADIDASNEO.CA,
ADIDASNETHERLANDS.COM, ADIDASNIKESHOESALE.COM,
ADIDAS-NMD.COM.CO a/k/a ADIDASYEEZY-BOOST.ORG a/k/a
ADIDASYEEZY-SHOES.ORG a/k/a HARDENVOL2.US a/k/a YEEZYS-
BOOST.ORG a/k/a YEEZYSNEAKERS.COM.CO,
ADIDASNMDGREECE.NET, ADIDASNMDR.COM,
ADIDASNUEVOS.NET, ADIDASOFFWHITE.COM,
ADIDASONLINEDISCOUNTUK.COM,
ADIDASORIGINALSGREATSALE.CO.UK,
ADIDASORIGINALSNZ.COM, ADIDASORIGINALSONLINE.COM,
ADIDASORIGINALSOUTLETIT.COM, ADIDASOUTLETCH.COM,
ADIDASOUTLETCHEAPONSALES.COM,
ADIDASOUTLETNORGE.COM, ADIDASOUTLETONLINEITALIA.COM,
ADIDASOUTLETONLINESTORESALE.COM,
ADIDASOUTLETSCHUHE.COM, ADIDASOUTLETSCHWEIZ.COM,
ADIDASPROPHERE.COM, ADIDASROMÂNIA.COM,
ADIDASROMANIASHOP.COM, ADIDASRUNNING.CO.UK,
ADIDASRUNNINGSHOES.CO.UK,
ADIDASRUNNINGSHOESOUTLET.COM, ADIDASSALE.US, ADIDAS-
SALE.US, ADIDASSALESK.COM, ADIDASSCHOENEN.CLUB, ADIDAS-
SCHUHE.COM, ADIDASSHOESJAPANS.COM,
ADIDASSHOESONLINEAU.COM, ADIDASSHOES-OUTLET.US,
ADIDASSHOESOUTLETAUSTRALIA.COM a/k/a
YEEZY350SALEIRELAND.COM, ADIDASSHOPINDIRIM.COM,
ADIDASSINGAPORESG.COM, ADIDAS-SKO.COM,

ADIDASSNEAKERSUDSALG.COM, ADIDASSNEAKERSUK.CO.UK,
ADIDASSPORTSWEAR.FR, ADIDAS-STANSMITH.COM,
ADIDASSTANSMITHBOLD.COM,
ADIDASSTANSMITHROMANIA.COM, ADIDASSTORESCHWEIZ.COM,
ADIDASSUPERSTARJAPAN.COM, ADIDASSUPERSTARNORGE.COM,
ADIDASSUPERSTARORIGINALS.COM,
ADIDASSUPERSTARSALES.CO.UK,
ADIDASSUPERSTARTILBUD.COM, ADIDASTERREXSOLO.COM,
ADIDASTOBUY.COM, ADIDAS-TRAINERS.COM,
ADIDASTUBULARPORTUGAL.COM, ADIDASULTRABOOST.CA,
ADIDASULTRABOOSTSUOMI.COM,
ADIDASULTRABOOSTTILBUD.COM, ADIDASWEB.ONLINE,
ADIDASYEEZYS.UK, ADIDASYENISEZON.COM,
ADIDASZLAVYSK.COM, ADIDASZXFLUXDAMA.COM,
BILLIGEADIDAS.NET, BUTYADIDASPOLSKA.COM,
BUYADIDASEQT.COM, CHEAPADIDASNMDCHINASTORE.COM a/k/a
SHOESCHEAPSHOP.COM, CHEAPADIDASORIGINALS.CO.UK,
CHEAPADIDASSUPERSTARS.COM,
CHEAPADIDASWHOLESALE.COM, ENUCUZREEBOK.COM,
EXZAPATOSADIDAS.COM, KERESADIDAS.NET, LOGOADIDAS.COM,
MYYDAANREEBOK.COM, NEWCOLLECTIONADIDAS.COM,
NEWESTADIDAS.COM, NIKEADIDASNMD.COM,
NYEADIDASSKO.COM, PAPUCIADIDAS.COM,
REEBOKASTRORIDE.COM, REEBOKAZTEC.COM,
REEBOKCANADA.CA, REEBOKCIPOAKCIOK.COM,
REEBOKCIPOWEBSHOP.COM, REEBOKCLASSICSAUSTRALIA.COM,
REEBOKELEGANTI.COM, REEBOKEXOFIT.COM,
REEBOKGREECEGR.COM, REEBOKLOJASPORTUGAL.COM,
REEBOKOUTLET.US, REEBOKOUTLETONLINESALE.COM,
REEBOKOUTLETSALE.US a/k/a REEBOKSTORE.US,
REEBOKSALEAUSTRALIA.COM, REEBOKSTORE.ONLINE,
REEBOKWEBARUHAZ.COM, REEBOKZOKURUNNER.COM,
SALEREEBOKS.COM, SIZEADIDAS.COM, SNEAKERSREEBOKA.TOP,
STAN-SMITH-ADIDAS.US, ZAPATILLAS-ADIDAS.COM,
ZAPATOSSOCCERADIDAS.COM, ACEWRITINGSOLUTIONS.COM,
AD2019.TOP, ADSPORTUK.COM, ADSSK.COM, AGENCY-
QUARTZNET.COM, AIRMAXCHEAPSHOES.COM, AJERSEYS123.TOP,
ALANVODK.COM, ARKISACONSTRUCCIONES.COM,
ARTHURRIVEST.COM, ARTTHERAPYMOVIE.COM, ASPEN-
TREEEXPERTS.COM, BASKETMONTESION.COM, BBCONTINUE.COM
a/k/a COMFORTKICK3.COM a/k/a COMPRAR-RUN.COM a/k/a
ENHANCEKEEP.COM a/k/a EPICREACTSHOE.COM a/k/a
FASTONLINEBAY.COM a/k/a ITEMRELEASE.COM a/k/a
MAXIMUMMORE.COM a/k/a NEGRASES.COM a/k/a
NEWBSPORTS.COM a/k/a NMDSCHUHE.COM a/k/a PAIROFSNKS.COM
a/k/a PWSNEAKER.COM a/k/a RUPTRUNNER.COM a/k/a

SHOESPRIEST.COM a/k/a SHOESTREK.COM, BECKERREHBEIN.COM,
BELIEVEINATL.COM, BELLAROUGEBEAUTY.COM,
BESTJERSEYSTORE.COM a/k/a
BIZWHOLESALEJERSEYSCHINAONLINE.COM a/k/a
CHEAPJERSEYX.COM a/k/a WHOLESALESTORE2019.COM,
BESTSPORTJERSEY.COM, BIZCHEAPJERSEYS.COM a/k/a
POSTCHEAPJERSEYS.COM, BLADDERTAPELAWYER.COM,
BRADBERGUM.COM, BUILDINGPRODUCTJOBS.COM,
BUYKYEEZY.COM, CANAMSPORTLOW.COM, CANN-
FONLENO.COM, CARRICKWATERMUSIC.COM,
CASTLEROCKVETCENTER.COM, CERVECERIAELPOTRO.COM,
CHEAPCUSTOMSOCCERJERSEYS.COM a/k/a
CHEAPJERSEYSCHINA.ORG, CHEAPNHLJERSEYSCANADA.COM,
CHEAPNFLSHOP.CO, CHEAPYEEZYONLINE.COM,
CHEAPYEEZYSHOES.CO.UK, CHICAGOINSPANISH.COM,
CJANDNICOLE.COM, COUPONINGTOCRUISE.COM, COURS-
FRANCAIS-PARIS.COM, CRUZCHECK.COM, DANTIESMITH-
BROWN.COM, DAS-KUHLING.COM, DAVESREUPHOLSTERY.COM,
DELEGATEWITTMAN.COM, DEVINACHOCOLATES.COM, DEVON-
MUSIC.COM, DOCDONNINI.COM, EBAYSOCCER.NET,
ELBERTPARKSANDREC.COM, ELECTRICMOWERGUIDE.COM,
ELYAFINEART.COM, ENCHANTEDOM.COM, EVENT-NURSE.COM,
EXTERNAL-SHUTTERS.COM, FAMILYAFFAIRDAYCARE.COM,
FINNEGANSFOREST.COM, FOLK-IT.COM, FRESHERSSKIWEEK.COM,
FUTBOL-TRAINING.COM, GLASEREI-PERTSCHY.COM,
GOALJERSEYS.CO, GO-FACTORING.COM, GOMARTXCARDIN.COM,
HEIMAUTOANDRECYCLING.COM, HINDUAGENCY.COM,
HUDSONHOMELIST.COM, IEMILIANOZAPATA.COM,
INJEANIUSJACKETS.COM, JERSEYWARCHEAP.COM,
JONESBOROPAWNSHOP.COM, KIDZONEDIRECT.COM, KOKO-
IMAGESAFARIS.COM, KUSADASINOVACAFE.COM, KYEEZY.COM,
LABOUTIQUEDELABANICO.COM, LANASSCHOOLOFDANCE.COM,
LATESTYEEZYBOOST.COM, LEGIARRE.COM,
LEONARDOANDSONS.COM, LISTERWATSON.COM,
LORNALEEMUSIC.COM, LOSANGELESBR.COM, LTCOMPLETE.COM,
LUMINARY-CANDLES.COM, MAIMADHARA.COM,
MARINAKLEMENTE.COM, MASONRYWICHITA.COM,
MELTEMTEKNESI.COM, MENDEZCOLES.COM, MESUTSUB.COM,
METALICASMETALVAL.COM, MIACARE-COMFORT.COM,
MILLSFAMILYATLANTA.COM, MJSELLSPROPERTY.COM,
MORANWYOMING.COM, MSKADAIWALA.COM, NEEDVACAY.COM,
NEWGLASSDOORS.COM a/k/a NHLJERSEYCHINAS.COM,
NHLJERSEYSCHINA.COM, NICOKICKS.NET, NIGHTBRUSHERS.COM,
NIKKIFORRRISD.COM, NITRO-HIGHSCHOOL.COM,
NJDIAMONDEXCHANGE.COM, NTECIV.COM,
OCHUCHEUMUODUTOWN.COM, ONGLEMENT-VOTRE.COM,

ONYADISTICARET.COM, OSTLERSOFWORCESTER.CO.UK a/k/a
ROYALMAGICK.COM, PAMFOWLERGRACE.COM,
PARSADUANA.COM, PASTRYNINJAPHOTOGRAPHY.COM,
PAULLAMBEFITNESS.COM, PERGIWAMAHAYATI.COM,
PHOTOSHOPLINK.COM, PIZZERIAQUAEFARINA.COM,
PUBSHOES.COM, QUANTICO-REALESTATE.COM,
RAFTERORANCH.NET, RIKKEROHR.COM,
RUTHLINWELLNESS.COM, SALLYROSEVEARE.COM,
SAMWHITEPAGES.COM, SAVVYBASE1.COM,
SCARYCOSTUMESONLINE.COM, SCAVBOT.COM,
SCHUYLERIONAPRESS.COM, SEAMOSRAROSJUNTOS.COM,
SHOPCLEATS.NET, SNEAKERSBOOST.COM, SOCCERKITFR.COM,
SOFTWARETUTOR.CO.UK, SOUNDPOINTRESORT.COM, SSR-
PROPERTIES.COM, STEVENMCKNIGHTGUITAR.COM,
SUJIKESHI.COM, SUMACASE.COM, TARTOFRUITS.COM,
TAYFUNKARA.COM, TEAKWOODMINISTRIES.COM,
THEINSULATIONSITE.COM, TOMBOWKERPHOTOGRAPHY.COM,
TOPROOFINGSITE.COM, UNAVENIRPOURLAGRECE.COM,
VASILMOSKOV.COM, VATAN-ELEKTRONIK.COM,
VISUALKEIRADIO.COM,
WHOLESALEAUTHENTICJERSEYSFORCHEAP.COM,
WILGALVEZPHOTOGRAPHY.COM, YEEZY350WHOLESALE.COM,
YEEZYBOOST700.US, YEEZYBOOSTSTOCK.COM,
YEEZYBOOSTUS.US, YEEZYCLAY.US, YEEZY-FACTORY.COM,
YEEZYFACTORY.STORE, YEEZYGO.STORE a/k/a YEEZYSUN.CLUB
a/k/a YEEZYSUN.STORE, YEEZYHYPERSPACE.US, YEEZY-
OFFICIAL.COM, YEEZYOP.CLUB, YEEZYSHOES.CA,
YEEZYSHOESUS.COM, YEEZYSITOUFFICIALE.COM, YEEZY-
SUPREME.COM, YEEZYSUS.US, and ZANEARTZ.COM, each an
Individual, Partnership, or Unincorporated Association,

**Defendants**.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs, adidas AG, adidas International Marketing B.V., adidas America, Inc., Reebok

International Limited, and Reebok International Ltd., (collectively "Plaintiffs") hereby sue

Defendants the individuals, partnerships, and unincorporated associations identified in the

caption, which are set forth on Schedule "A" hereto (collectively "Defendants").  Defendants are

promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly

4

similar imitations of Plaintiffs' respective trademarks within this district through at least the fully interactive commercial Internet websites operating under the domain names identified on Schedule "A" hereto (the "Subject Domain Names"). In support of their claims, Plaintiffs allege as follows:

**JURISDICTION AND VENUE**

1.      This is an action for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement, pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a), and 1125(d) and The All Writs Act, 28 U.S.C. § 1651(a). Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district because they operate commercial websites accessible in this district, conduct business by registering and maintaining commercial Subject Domain Names registered within the United States and/or and direct business activities towards consumers throughout the United States, including within the State of Florida and this district through at least the fully interactive[1] commercial Internet websites operating under the Subject Domain Names.

---

[1] Several Defendants use their Subject Domain Names to act as supporting domain names to direct traffic to their fully-interactive, commercial websites operating under other Subject Domain Names, from which consumers can complete purchases.  Some of the supporting domain names, when accessed directly, appear to be blog style or non-operating websites; however, when visited from a search engine such as Google, visitors are redirected to the fully-interactive websites operating under other Subject Domain Names.  Other supporting domain names either automatically redirect and forward to a fully-interactive, commercial Internet website operating under one of the Subject Domain Names or redirect a consumer to a fully-

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, engaged in infringing activities and causing harm within this district by advertising, offering to sell, and/or selling infringing products into this district.

## THE PLAINTIFFS

4.      Plaintiff adidas AG ("adidas AG") is a joint stock company organized and existing under the laws of the Federal Republic of Germany, having its office and principal place of business at Postach 1120, D-91072 Herzogenaurach, Federal Republic of Germany. adidas AG is currently, and for years has been, one of the world's leading manufacturers of athletic footwear and apparel, including products bearing the distinctive adidas Mark, Trefoil Mark, and 3 Bars Logo.

5.      Plaintiff adidas International Marketing B.V. ("adidas International") is a corporation organized and existing under the laws of Netherlands, having its principal place of business in the Netherlands.  adidas International is wholly owned by adidas AG and its affiliates.

6.      Plaintiff adidas America, Inc. ("adidas America") is a corporation organized and existing under the laws of the State of Oregon, having its principal place of business at 5055 N. Greeley Avenue, Portland, Oregon, 97217.  adidas America is wholly owned by adidas AG and its affiliates, and within this country adidas America is a licensed distributor of adidas-branded merchandise, including goods bearing the distinctive adidas Mark, Trefoil Mark, and 3 Bars Logo. adidas AG, adidas International, and adidas America shall be referred to herein collectively as "adidas."

---

interactive, commercial Internet website operating under one of the Subject Domain Names upon clicking a product or link on the website.  All of the redirecting websites are identified as such in Composite Exhibit "3" hereto.

7.      Plaintiff Reebok International Limited ("Reebok International") is a corporation organized and existing under the laws of England, having its principal place of business at 11/12 Pall Mall, London SWI Y 5LU, England. Reebok International is wholly owned by adidas AG and its affiliates.  Reebok International currently is, and for many years has been, one of the world's leading manufacturers of footwear and sportswear, including products bearing the Reebok Mark, RBK Mark, Vector Mark, Starcrest Mark, and Stacked Reebok Delta Mark.

8.      Plaintiff Reebok International Ltd. ("Reebok Ltd.") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, having its principal place of business at 25 Dry Dock Ave., Boston, Massachusetts, 02210.  Reebok Ltd. is wholly-owned by adidas AG and its affiliates. Reebok International and Reebok Ltd., and any predecessors or related entities, shall be collectively referred to herein as "Reebok."

9.      Plaintiffs' trademarked goods are sold through various channels of trade within the State of Florida, including this district.  Defendants, through the advertising, sale, and offering for sale counterfeit and infringing versions of Plaintiffs' branded products, are directly, and unfairly, competing with Plaintiffs' economic interests in the State of Florida and causing Plaintiffs harm within this jurisdiction.

10.      Like many other famous trademark owners, Plaintiffs suffer ongoing daily and sustained violations of their respective trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiffs' trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits.

11.      In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, each year Plaintiffs expend significant

monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement, such as field training, guides and seminars.  The exponential growth of counterfeiting over the Internet has created an environment that require Plaintiffs to file a number of lawsuits, often it later turns out, against the same individuals and groups, in order to protect both consumers and themselves from the ill effects of confusion and the erosion of the goodwill connected to Plaintiffs' respective brands.

## THE DEFENDANTS

12.     Defendants operate through domain names registered with registrars in multiple countries, including the United States, and are comprised of individuals, partnerships, and/or business entities of unknown makeup, whom, upon information and belief, likely reside and/or operate in foreign jurisdictions or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendants direct their business activities towards consumers throughout the world, including the United States and within this district through the simultaneous operation of at least the fully interactive Internet commercial websites existing under the Subject Domain Names.

13.     Upon information and belief, Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by the same Defendant Number on Schedule "A" hereto.

14.     Upon information and belief, Defendants are directly and personally contributing to, inducing and engaging in the sale of counterfeit branded products as alleged herein, often times as partners, co-conspirators and/or suppliers.

15.     Defendants are part of an ongoing scheme to create and maintain an illegal marketplace enterprise on the World Wide Web, which (i) confuses consumers regarding the

source of Defendants' goods for profit, and (ii) expands the marketplace for illegal, counterfeit versions of Plaintiffs' branded goods while shrinking the legitimate marketplace for Plaintiffs' genuine branded goods.  The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiffs' respective famous names and trademarks, as well as the destruction of the legitimate market sector in which they operate.

16.     Defendants are the past and present controlling forces behind the operation of commercial Internet websites operating under at least the Subject Domain Names.

17.     Upon information and belief, Defendants directly engage in unfair competition with Plaintiffs by (i) advertising, offering for sale and/or selling goods bearing counterfeits and infringements of one or more of Plaintiffs' individual trademarks to consumers within the United States and this district through at least the commercial websites operating under the Subject Domain Names and additional domains and websites not yet known to Plaintiffs and (ii) creating and maintaining an illegal marketplace enterprise for the purpose of diverting business from Plaintiffs' legitimate marketplace for their genuine goods.  Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, and/or sale of counterfeit branded goods into the State, and by operating an illegal marketplace enterprise which impacts and interferes with commerce throughout the United States, including within the State of Florida.

18.     Upon information and belief, Defendants have registered, established or purchased, and maintained their respective Subject Domain Names, and the websites operating thereunder.  Upon information and belief, many Defendants have engaged in fraudulent conduct with respect to the registration of the Subject Domain Names by providing false and/or misleading information to their various registrars during the registration or maintenance process.

Upon information and belief, Defendants have registered and/or maintained the Subject Domain Names for the sole purpose of engaging in illegal counterfeiting activities.

19.    Upon information and belief, Defendants will continue to register or acquire new domain names for the purpose of selling and/or offering for sale goods bearing counterfeit and confusingly similar imitations of one or more of Plaintiffs' trademarks unless preliminarily and permanently enjoined. Moreover, upon information and belief, Defendants will continue to maintain and grow their illegal marketplace enterprise at Plaintiffs' expense unless preliminarily and permanently enjoined.

20.    Defendants' Internet-based website businesses amount to nothing more than illegal operations established and operated in order to infringe the intellectual property rights of Plaintiffs and others.

21.    Defendants' business names, i.e., the Subject Domain Names and any other domain names used in connection with the sale of counterfeit and infringing goods bearing one or more of Plaintiffs' trademarks are essential components of Defendants' counterfeiting and infringing activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiffs.  Moreover, Defendants are using Plaintiffs' respective famous names and/or trademarks to drive Internet consumer traffic to their websites operating under the Subject Domain Names, thereby creating and increasing the value of the Subject Domain Names and decreasing the size and value of Plaintiffs' legitimate marketplace at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

### adidas's Trademark Rights

22.     adidas is currently, and for years has been, one of the world's leading manufacturers of athletic footwear, apparel, and sporting equipment.  adidas has used its famous and distinctive trademarks **adidas**, ⟠, and ⟁ (collectively, the "adidas Marks"), for more than seventy years, forty years, and twenty nine years, respectively, in connection with the above-mentioned goods. The adidas Marks signify the quality and reputation of adidas products.

23.     adidas is the owner of multiple trademark registrations for the adidas Marks, including the valid trademark registrations identified on Schedule "B" hereto, issued by the United States Patent and Trademark Office. The adidas Marks are used in conjunction with the manufacture and distribution of quality goods in the categories also identified on Schedule "B." True and correct copies of the Certificates of Registration for the adidas Marks are attached hereto as Composite Exhibit "1."

24.     The adidas Marks have been used in interstate commerce to identify and distinguish adidas products for an extended period of time and serve as symbols of adidas's quality, reputation, and goodwill.

25.     The adidas Marks are well-known and famous and have been for many years. adidas has expended substantial time, money and other resources developing, advertising and otherwise promoting the adidas Marks.  Specifically, adidas has used the adidas Marks in connection with its frequent sponsorship of sports tournaments and organizations, as well as professional athletes and collegiate sports teams.  For example, adidas has long-term relationships with the University of Nebraska, and the University of Louisville. Among many others, NBA stars Derrick Rose, James Harden, and Andrew Wiggins, NFL stars Von Miller,

Aaron Rodgers, Dak Prescott, NHL star Sidney Crosby, baseball player Kris Bryant, and soccer stars David Beckman and Lionel Messi all are sponsored by adidas. For many years, adidas has been a sponsor of the World Cup soccer tournament, has sponsored the world-famous Boston Marathon for more than a decade, and has sponsored many other events, teams, and individuals. Prominent use of the adidas Marks in connection with these sponsorship activities has further enhanced the adidas Marks' recognition and fame. The adidas Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

26.     adidas has extensively used, advertised, and promoted the adidas Marks in the United States in association with the sale of quality products.  adidas has spent hundreds of millions of dollars promoting the adidas Marks and products bearing the adidas Marks.  In recent years, annual sales of products bearing the adidas Marks have totaled in the billions of dollars globally and in the hundreds of millions of dollars within the United States.

27.     The adidas Marks have achieved secondary meaning as identifiers of quality goods as a result of adidas's advertisement, promotion, and sale of such goods thereunder.

28.     As a result of adidas's efforts, members of the consuming public readily identify merchandise bearing or sold under the adidas Marks, as being quality merchandise sponsored and approved by adidas.

29.     adidas has carefully monitored and policed the use of the adidas Marks and has never assigned or licensed the adidas Marks to any Defendant in this matter.

30.     Genuine goods bearing the adidas Marks are widely legitimately advertised and promoted by adidas, authorized distributors and unrelated third parties via the Internet.  Over the course of the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to adidas's overall

marketing and consumer education efforts.  Thus, adidas expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.  Those strategies allow adidas and its authorized retailers to fairly and legitimately educate consumers about the value associated with the adidas Marks and the goods sold thereunder.

**Rebook's Trademark Rights**

31.     Reebok is currently, and for years has been, one of the world's leading manufacturers of athletic footwear, apparel, and sporting equipment.  Reebok has used its trademarks, REEBOK, ✗, ❄, and ◢ (collectively, the "Reebok Marks") for many years, in connection with the above-mentioned goods. The Reebok Marks signify the quality and reputation of Reebok products.

32.     Reebok is the owner of multiple trademark registrations for the Reebok Marks, including the valid and incontestable trademark registrations identified on Schedule "C" hereto, issued by the United States Patent and Trademark Office. The Reebok Marks are used in conjunction with the manufacture and distribution of quality goods in the categories also identified in Schedule "C."  True and correct copies of the Certificates of Registration for the Reebok Marks are attached hereto as Composite Exhibit "2."

33.     The Reebok Marks have been used in interstate commerce to identify and distinguish Reebok products for an extended period of time and serve as symbols of Reebok's quality, reputation, and goodwill.

34.     The Reebok Marks are well-known and famous and have been for many years.  Reebok has expended substantial time, money and other resources developing, advertising and otherwise promoting the Reebok Marks.  Specifically, Reebok has used the

Reebok Marks in connection with its frequent sponsorship of sports tournaments and organizations, and professional athletes. For example, Reebok sponsors numerous professional athletes, including NFL defensive end and reigning defensive player of the year J.J. Watt, NFL players Brandin Cooks and Devonta Freeman, four-time CrossFit Games Champion Rich Froning, Jr., as well as CrossFit Games Champions Tia Clair-Toomey, Ben Smith, and Katrin Tanja Davidsdottir.  Reebok has been the title sponsor of the annual Reebok CrossFit Games, which annually crowns the men and women as "The Fittest on Earth," since 2011, and is the exclusive apparel and footwear provider for CrossFit, one of the fastest growing sports in America. Reebok is also the exclusive apparel and footwear sponsor of the Ultimate Fighting Championship ("UFC"), which is the largest mixed martial arts promotion company in the world.  Additionally, Reebok is the title sponsor of the Ragnar Relay series of endurance races and official partner of Les Mills, the world's largest provider of choreographed group fitness classes at health clubs. Reebok also sponsors several entertainers, including Ariana Grande, Future, and Rae Sremmurd. The Reebok Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

35.     Reebok has extensively used, advertised and promoted the Reebok Marks in the United States in association with the sale of quality products.  Reebok has spent millions of dollars promoting the Reebok Marks and products bearing the Reebok Marks.  In recent years, Reebok has sold hundreds of millions of dollars of products bearing the Reebok Marks.

36.     The Reebok Marks have achieved secondary meaning as identifiers of quality goods as a result of Reebok's advertisement, promotion and sale of such goods thereunder.

37.     As a result of Reebok's efforts, members of the consuming public readily identify merchandise bearing or sold under the Reebok Marks, as being quality merchandise sponsored and approved by Reebok.

38.     Reebok has carefully monitored and policed the use of the Reebok Marks and has never assigned or licensed the Reebok Marks to any Defendant in this matter.

39.     Genuine goods bearing the Reebok Marks are widely legitimately advertised and promoted by Reebok, authorized distributors and unrelated third parties via the Internet.  Over the course of the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Reebok's overall marketing and consumer education efforts.  Thus, Reebok expends significant monetary resources on Internet marketing and consumer education, including SEO strategies. Those strategies allow Reebok and its authorized retailers to fairly and legitimately educate consumers about the value associated with the Reebok Marks and the goods sold thereunder.

**Defendants' Infringing Activities**

40.     In blatant disregard of Plaintiffs' rights, Defendants are promoting and advertising, distributing, selling, and/or offering for sale goods in interstate commerce that bear counterfeit and confusingly similar imitations of the adidas Marks and/or the Reebok Marks (collectively, the "Counterfeit Goods") through at least the fully interactive commercial Internet websites operating under the Subject Domain Names.  True and correct copies of the web pages reflecting samples of the Internet websites operating under the Subject Domain Names displaying Plaintiffs' branded items offered for sale are attached hereto as Composite Exhibit "3."  Specifically, upon information and belief, Defendants are using identical copies of the adidas Marks and/or the Reebok Marks (collectively, "Plaintiffs' Marks") for different quality

15

goods. Plaintiffs have used their respective Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiffs' merchandise.

41.     Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiffs' respective genuine goods. Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine quality goods offered for sale by Plaintiffs despite Defendants' knowledge that they are without authority to use Plaintiffs' Marks. The net effect of Defendants' actions will cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, and approved by Plaintiffs.

42.     Defendants advertise their Counterfeit Goods for sale to the consuming public via Internet websites operating under at least the Subject Domain Names.  In so advertising these goods, Defendants improperly and unlawfully use one or more of Plaintiffs' Marks without Plaintiffs' permission.  Indeed, Defendants herein misappropriated Plaintiffs' advertising ideas and methods of doing business with regard to the advertisement and sale of Plaintiffs' respective, genuine goods.  Upon information and belief, the misappropriation of Plaintiffs' advertising ideas in the form of Plaintiffs' Marks is, in part, the proximate cause of harm to Plaintiffs.

43.     As part of their overall infringement and counterfeiting scheme, most Defendants are, upon information and belief, concurrently employing and benefiting from substantially similar, and often times coordinated, paid advertising and SEO strategies based, in large measure, upon an illegal use of counterfeits and infringements of one or more of Plaintiffs'

Marks.  Specifically, Defendants are, upon information and belief, using counterfeits and infringements of one or more of Plaintiffs' famous names or Plaintiffs' Marks in order to make their websites selling illegal goods appear more relevant and attractive to consumers searching for Plaintiffs' related goods and information online.  By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiffs' respective, genuine goods.  Defendants are causing individual, concurrent and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiffs' respective, genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiffs' Marks, (iii) increasing Plaintiffs' overall cost to market their goods and educate consumers about their brands via the Internet, and/or (iv) maintaining an illegal marketplace enterprise which perpetuates the ability of Defendants and future entrants to that marketplace to confuse consumers and harm Plaintiffs with impunity.

44.    Upon information and belief, Defendants are concurrently conducting and directing their counterfeiting and infringing activities toward consumers and causing harm within this district and elsewhere throughout the United States.  As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit.

45.    Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiffs' respective ownership of Plaintiffs' Marks, including their respective, exclusive rights to use and license such intellectual property and the goodwill associated therewith.

46.     Defendants' use of Plaintiffs' respective Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiffs' consent or authorization.

47.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' respective goodwill and reputations. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

48.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiffs' respective genuine goods and Defendants' Counterfeit Goods, which there is not.

49.     Further, upon information and belief, Defendants 1-123 have registered their respective Subject Domain Names, using marks that are nearly identical and/or confusingly similar to at least one of Plaintiffs' Marks, (collectively the "Cybersquatted Subject Domain Names").

50.     Upon information and belief, Defendants 1-123 have registered and/or used the Cybersquatted Subject Domain Names with the bad faith intent to profit from Plaintiffs' respective Marks.

51.     Defendants do not have, nor have they ever had, the right or authority to use Plaintiffs' Marks.  Further, Plaintiffs' Marks have never been assigned or licensed to be used on any of the websites operating under the Cybersquatted Subject Domain Names.

52.     Upon information and belief, Defendants 1-123 have provided false and/or misleading contact information when applying for the registration of the Cybersquatted Subject Domain Names, or have intentionally failed to maintain accurate contact information with respect to the registration of the Cybersquatted Subject Domain Names.

53.     Upon information and belief, Defendants 1-123 have never used any of the Cybersquatted Subject Domain Names in connection with a bona fide offering of goods or services.

54.     Upon information and belief, Defendants 1-123 have not made any bona fide non-commercial or fair use of Plaintiffs' Marks on a website accessible under the any of Cybersquatted Subject Domain Names.

55.     Upon information and belief, Defendants 1-123 have intentionally incorporated Plaintiffs' respective Marks in their Cybersquatted Subject Domain Names to divert consumers looking for Plaintiffs' respective Internet websites to their own Internet websites for commercial gain.

56.     Given the visibility of Defendants' various websites and the similarity of their actions, it is clear Defendants are either related or, at a minimum, cannot help but know of each other's existence and the damage likely to be caused to Plaintiffs and the overall consumer market in which it operates as a result of Defendants' concurrent actions.

57.     Although some Defendants may be acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Plaintiffs.

58.     Plaintiffs have no adequate remedy at law.

59.     Plaintiffs are suffering irreparable injury and damages as a result of Defendants' unauthorized and wrongful use of Plaintiffs' Marks. If Defendants' counterfeiting, infringing, cybersquatting, and unfairly competitive activities, and their illegal marketplace enterprise are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

60.     The injury and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods and by the creation, maintenance and very existence of Defendants' illegal marketplace enterprise.

## <u>COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)</u>

61.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 60 above.

62.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of Plaintiffs' Marks in commerce in connection with the promotion, advertisement, distribution, sale and/or offering for sale of the Counterfeit Goods.

63.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and/or distributing goods using counterfeits and infringements of one or more of Plaintiffs' Marks.  Defendants are continuously infringing and inducing others to infringe

Plaintiffs' Marks by using one or more of them to advertise, promote, sell, and/or offer to sell counterfeit and infringing branded goods.

64.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

65.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damage and irreparable harm to Plaintiffs and are unjustly enriching Defendants at Plaintiffs' expense.

66.     Defendants' above-described illegal actions constitute counterfeiting and infringement of Plaintiffs' Marks in violation of Plaintiffs' respective rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

67.     Plaintiffs have each suffered and will continue to suffer irreparable injury due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

68.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 60 above.

69.     Defendants' Counterfeit Goods bearing and sold under copies of one or more of Plaintiffs' Marks have been widely advertised and offered for sale throughout the United States.

70.     Defendants' Counterfeit Goods bearing and sold under copies of one or more of Plaintiffs' Marks are virtually identical in appearance to each of Plaintiffs' respective, genuine goods.  However, Defendants' Counterfeit Goods are different in quality.  Accordingly,

Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

71.     Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and/or sale of the Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

72.     Defendants have authorized infringing uses of one or more of Plaintiffs' Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Many Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

73.     Additionally, many Defendants are using counterfeits and infringements of one or more of Plaintiffs' Marks in order to unfairly compete with Plaintiffs and others for space within search engine organic results, thereby jointly depriving Plaintiffs of a valuable marketing and educational tool which would otherwise be available to Plaintiffs and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web.

74.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

75.     Plaintiffs have no adequate remedy at law, and have each sustained indivisible injury and damage caused by Defendants' concurrent conduct.  Absent an entry of an injunction by this Court, each Plaintiff will continue to suffer irreparable injury to their respective goodwill and business reputations as well as monetary damages.

## COUNT III - CLAIM FOR RELIEF FOR CYBERSQUATTING
## UNDER §43(d) OF THE LANHAM ACT (15 U.S.C. §1125(d))
(Against Defendants 1-123 only)

76.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 60 above.

77.     Upon information and belief, Defendants 1-123 have acted with the bad faith intent to profit from Plaintiffs' Marks and the goodwill associated with Plaintiffs' Marks by registering and using the Cybersquatted Subject Domain Names.

78.     Plaintiffs' Marks were distinctive and famous at the time Defendants 1-123 registered the Cybersquatted Subject Domain Names.

79.     The Cybersquatted Subject Domain Names are identical to, confusingly similar to or dilutive of one or more of Plaintiffs' Marks.

80.     Defendants 1-123's conduct is done with knowledge and constitutes a willful violation of Plaintiffs' rights in Plaintiffs' Marks.  At a minimum, Defendants' conduct constitutes reckless disregard for and willful blindness to Plaintiffs' Marks' rights.

81.     Defendants 1-123's actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

82.     Plaintiffs have no adequate remedy at law and have each suffered and will continue to suffer irreparable injury and damage due to the above described activities of Defendants 1-123 if they are not enjoined.

## COUNT IV - COMMON LAW UNFAIR COMPETITION

83.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 60 above.

84.     This is an action against Defendants based on their (i) promotion, advertisement, distribution, sale and/or offering for sale of goods bearing marks which are virtually identical, both visually and phonetically, to Plaintiffs' Marks, and (ii) creation and maintenance of an illegal, ongoing marketplace enterprise operating in parallel to the legitimate marketplace in which Plaintiffs sell their genuine goods, in violation of Florida's common law of unfair competition.

85.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and/or distributing goods bearing counterfeits and infringements of one or more of Plaintiffs' Marks. Defendants are also using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs for (i) space in search engine results across an array of search terms and/or (ii) visibility on the World Wide Web.

86.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of Plaintiffs' Marks.

87.     Plaintiffs have no adequate remedy at law and are suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT V - COMMON LAW TRADEMARK INFRINGEMENT

88.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 60 above.

89.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and/or sale of their Counterfeit Goods bearing one or more of Plaintiffs' Marks.  Plaintiffs are the owners of all common law rights in and to Plaintiffs' Marks.

90.     Specifically, Defendants, upon information and belief, promoting and otherwise advertising, distributing, offering for sale, and/or selling goods bearing infringements of one or more of Plaintiffs' Marks.

91.     Defendants infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing Plaintiffs' Marks.

92.     Plaintiffs have no adequate remedy at law and are suffering damages and irreparable injury as a result of Defendants' actions.

## PRAYER FOR RELIEF

93.     WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary restraining order, as well as preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting Plaintiffs' Marks; from using Plaintiffs' Marks, or any mark or trade dress similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, trademark or trade dress that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with Plaintiffs, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of

Defendants are in any way endorsed by, approved by, and/or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiffs' Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiffs' respective name or trademarks; and from otherwise unfairly competing with Plaintiffs.

      b.    Entry of an order requiring Defendants, their agent(s) or assign(s), to assign all rights, title, and interest, to the Subject Domain Names to Plaintiffs and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

      c.    Entry of an order requiring Defendants, their agent(s) or assign(s), to instruct all search engines to permanently delist or deindex the Subject Domain Name(s) and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

      d.    Entry of an order that, upon Plaintiffs' request, those acting in concert or participation with Defendants who have notice of the injunction, as service providers cease hosting, facilitating access to, or providing any supporting service to any and all domain names, including but not limited to the Subject Domain Names, and websites through which Defendants

engage in the promotion, offering for sale and/or sale of goods using counterfeits and/or infringements of Plaintiffs' Marks

      e.    Entry of an order pursuant to 28 U.S.C §1651(a), The All Writs Act and the Court's inherent authority, that, upon Plaintiffs' request, the top level domain (TLD) Registry for each of the Subject Domain Names or their administrators, including backend registry operators or administrators, place the Subject Domain Names on Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files which link the Subject Domain Names to the IP addresses where the associated websites are hosted.

      f.    Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act canceling for the life of the current registration or, at Plaintiffs' election, transferring the Subject Domain Names and any other domain names used by Defendants to engage in their counterfeiting of Plaintiffs' Marks at issue to Plaintiffs' control so they may no longer be used for illegal purposes.

      g.    Entry of an order requiring Defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' trademark counterfeiting and infringing activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiffs' election with respect to Count I, that Plaintiffs be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

      h.    Entry of an order requiring Defendants 1-123 to account to and pay Plaintiffs for all profits and damages resulting from Defendants 1-123's cybersquatting activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or, at

Plaintiffs' election with respect to Count III, that Plaintiffs be awarded statutory damages from Defendants 1-123 in the amount of one hundred thousand dollars ($100,000.00) per cybersquatted domain name used as provided by 15 U.S.C. §1117(d) of the Lanham Act.

        i.     Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs' costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

        j.     Entry of an award of pre-judgment interest on the judgment amount.

        k.     Entry of an order for any further relief as the Court may deem just and proper.

DATED: May 30, 2019.          Respectfully submitted,

                              STEPHEN M. GAFFIGAN, P.A.

                              By: **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
401 East Las Olas Blvd., #130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: stephen@smgpa.net
E-mail: leo@smgpa.net
E-mail: raquel@smgpa.net

Attorneys for Plaintiffs

**SCHEDULE A**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Defendant Number | Defendant / Domain Name |
|---|---|
| 1 | adidascitycup.com |
| 2 | abbigliamentoadidas.com |
| 3 | adidasalesuomi.com |
| 4 | adidascanadasale.com |
| 5 | adidascipoolcson.com |
| 6 | adidascontinental.co.uk |
| 7 | adidasdrose8.com |
| 8 | adidasfootwearsaleuk.co.uk |
| 9 | adidas-france.top |
| 10 | adidasgalaxy.com |
| 11 | adidasgazellesuomi.com |
| 12 | adidasgazelletilbud.com |
| 13 | adidashamburg.com |
| 14 | adidashere.com |
| 15 | adidashungary.com |
| 16 | adidasiadidasromania.com |
| 17 | adidasinike2019.com |
| 18 | adidasireebokpump.com |
| 19 | adidasireebokromania.com |
| 20 | adidasirelandsale.com |
| 21 | adidas-italia.club |
| 22 | adidasneo.ca |
| 23 | adidasnetherlands.com |
| 24 | adidasnikeshoesale.com |
| 25 | adidas-nmd.com.co |
| 25 | adidasyeezy-boost.org |
| 25 | adidasyeezy-shoes.org |
| 25 | hardenvol2.us |
| 25 | yeezys-boost.org |
| 25 | yeezysneakers.com.co |
| 26 | adidasnmdgreece.net |
| 27 | adidasnmdr.com |
| 28 | adidasnuevos.net |
| 29 | adidasoffwhite.com |
| 30 | adidasonlinediscountuk.com |
| 31 | adidasoriginalsgreatsale.co.uk |
| 32 | adidasoriginalsnz.com |
| 33 | adidasoriginalsonline.com |

| | |
|---|---|
| 34 | adidasoriginalsoutletit.com |
| 35 | adidasoutletch.com |
| 36 | adidasoutletcheaponsales.com |
| 37 | adidasoutletnorge.com |
| 38 | adidasoutletonlineitalia.com |
| 39 | adidasoutletonlinestoresale.com |
| 40 | adidasoutletschuhe.com |
| 41 | adidasoutletschweiz.com |
| 42 | adidasprophere.com |
| 43 | adidasromânia.com |
| 44 | adidasromaniashop.com |
| 45 | adidasrunning.co.uk |
| 46 | adidasrunningshoes.co.uk |
| 47 | adidasrunningshoesoutlet.com |
| 48 | adidassale.us |
| 49 | adidas-sale.us |
| 50 | adidassalesk.com |
| 51 | adidasschoenen.club |
| 52 | adidas-schuhe.com |
| 53 | adidasshoesjapans.com |
| 54 | adidasshoesonlineau.com |
| 55 | adidasshoes-outlet.us |
| 56 | adidasshoesoutletaustralia.com |
| 56 | yeezy350saleireland.com |
| 57 | adidasshopindirim.com |
| 58 | adidassingaporesg.com |
| 59 | adidas-sko.com |
| 60 | adidassneakersudsalg.com |
| 61 | adidassneakersuk.co.uk |
| 62 | adidassportswear.fr |
| 63 | adidas-stansmith.com |
| 64 | adidasstansmithbold.com |
| 65 | adidasstansmithromania.com |
| 66 | adidasstoreschweiz.com |
| 67 | adidassuperstarjapan.com |
| 68 | adidassuperstarnorge.com |
| 69 | adidassuperstaroriginals.com |
| 70 | adidassuperstarsales.co.uk |
| 71 | adidassuperstartilbud.com |
| 72 | adidasterrexsolo.com |
| 73 | adidastobuy.com |
| 74 | adidas-trainers.com |
| 75 | adidastubularportugal.com |

| 76 | adidasultraboost.ca |
| 77 | adidasultraboostsuomi.com |
| 78 | adidasultraboosttilbud.com |
| 79 | adidasweb.online |
| 80 | adidasyeezys.uk |
| 81 | adidasyenisezon.com |
| 82 | adidaszlavysk.com |
| 83 | adidaszxfluxdama.com |
| 84 | billigeadidas.net |
| 85 | butyadidaspolska.com |
| 86 | buyadidaseqt.com |
| 87 | cheapadidasnmdchinastore.com |
| 87 | shoescheapshop.com |
| 88 | cheapadidasoriginals.co.uk |
| 89 | cheapadidassuperstars.com |
| 90 | cheapadidaswholesale.com |
| 91 | enucuzreebok.com |
| 92 | exzapatosadidas.com |
| 93 | keresadidas.net |
| 94 | logoadidas.com |
| 95 | myydaanreebok.com |
| 96 | newcollectionadidas.com |
| 97 | newestadidas.com |
| 98 | nikeadidasnmd.com |
| 99 | nyeadidassko.com |
| 100 | papuciadidas.com |
| 101 | reebokastroride.com |
| 102 | reebokaztec.com |
| 103 | reebokcanada.ca |
| 104 | reebokcipoakciok.com |
| 105 | reebokcipowebshop.com |
| 106 | reebokclassicsaustralia.com |
| 107 | reebokeleganti.com |
| 108 | reebokexofit.com |
| 109 | reebokgreecegr.com |
| 110 | reeboklojasportugal.com |
| 111 | reebokoutlet.us |
| 112 | reebokoutletonlinesale.com |
| 113 | reebokoutletsale.us |
| 113 | reebokstore.us |
| 114 | reeboksaleaustralia.com |
| 115 | reebokstore.online |
| 116 | reebokwebaruhaz.com |

| | |
|---|---|
| 117 | reebokzokurunner.com |
| 118 | salereeboks.com |
| 119 | sizeadidas.com |
| 120 | sneakersreeboka.top |
| 121 | stan-smith-adidas.us |
| 122 | zapatillas-adidas.com |
| 123 | zapatossocceradidas.com |
| 124 | acewritingsolutions.com |
| 125 | ad2019.top |
| 126 | adsportuk.com |
| 127 | adssk.com |
| 128 | agency-quartznet.com |
| 129 | airmaxcheapshoes.com |
| 130 | ajerseys123.top |
| 131 | alanvodk.com |
| 132 | arkisaconstrucciones.com |
| 133 | arthurrivest.com |
| 134 | arttherapymovie.com |
| 135 | aspen-treeexperts.com |
| 136 | basketmontesion.com |
| 137 | bbcontinue.com |
| 137 | comfortkick3.com |
| 137 | comprar-run.com |
| 137 | enhancekeep.com |
| 137 | epicreactshoe.com |
| 137 | fastonlinebay.com |
| 137 | itemrelease.com |
| 137 | maximummore.com |
| 137 | negrases.com |
| 137 | newbsports.com |
| 137 | nmdschuhe.com |
| 137 | pairofsnks.com |
| 137 | pwsneaker.com |
| 137 | ruptrunner.com |
| 137 | shoespriest.com |
| 137 | shoestrek.com |
| 138 | beckerrehbein.com |
| 139 | believeinatl.com |
| 140 | bellarougebeauty.com |
| 141 | bestjerseystore.com |
| 141 | bizwholesalejerseyschinaonline.com |
| 141 | cheapjerseyx.com |
| 141 | wholesalestore2019.com |

| 142 | bestsportjersey.com |
| 143 | bizcheapjerseys.com |
| 143 | postcheapjerseys.com |
| 144 | bladdertapelawyer.com |
| 145 | bradbergum.com |
| 146 | buildingproductjobs.com |
| 147 | buykyeezy.com |
| 148 | canamsportlow.com |
| 149 | cann-fonleno.com |
| 150 | carrickwatermusic.com |
| 151 | castlerockvetcenter.com |
| 152 | cerveceriaelpotro.com |
| 153 | cheapcustomsoccerjerseys.com |
| 154 | cheapjerseyschina.org |
| 154 | cheapnhljerseyscanada.com |
| 155 | cheapnflshop.co |
| 156 | cheapyeezyonline.com |
| 157 | cheapyeezyshoes.co.uk |
| 158 | chicagoinspanish.com |
| 159 | cjandnicole.com |
| 160 | couponingtocruise.com |
| 161 | cours-francais-paris.com |
| 162 | cruzcheck.com |
| 163 | dantiesmith-brown.com |
| 164 | das-kuhling.com |
| 165 | davesreupholstery.com |
| 166 | delegatewittman.com |
| 167 | devinachocolates.com |
| 168 | devon-music.com |
| 169 | docdonnini.com |
| 170 | ebaysoccer.net |
| 171 | elbertparksandrec.com |
| 172 | electricmowerguide.com |
| 173 | elyafineart.com |
| 174 | enchantedom.com |
| 175 | event-nurse.com |
| 176 | external-shutters.com |
| 177 | familyaffairdaycare.com |
| 178 | finnegansforest.com |
| 179 | folk-it.com |
| 180 | freshersskiweek.com |
| 181 | futbol-training.com |
| 182 | glaserei-pertschy.com |

| 183 | goaljerseys.co |
|-----|----------------|
| 184 | go-factoring.com |
| 185 | gomartxcardin.com |
| 186 | heimautoandrecycling.com |
| 187 | hinduagency.com |
| 188 | hudsonhomelist.com |
| 189 | iemilianozapata.com |
| 190 | injeaniusjackets.com |
| 191 | jerseywarcheap.com |
| 192 | jonesboropawnshop.com |
| 193 | kidzonedirect.com |
| 194 | koko-imagesafaris.com |
| 195 | kusadasinovacafe.com |
| 196 | kyeezy.com |
| 197 | laboutiquedelabanico.com |
| 198 | lanasschoolofdance.com |
| 199 | latestyeezyboost.com |
| 200 | legiarre.com |
| 201 | leonardoandsons.com |
| 202 | listerwatson.com |
| 203 | lornaleemusic.com |
| 204 | losangelesbr.com |
| 205 | ltcomplete.com |
| 206 | luminary-candles.com |
| 207 | maimadhara.com |
| 208 | marinaklemente.com |
| 209 | masonrywichita.com |
| 210 | meltemteknesi.com |
| 211 | mendezcoles.com |
| 212 | mesutsub.com |
| 213 | metalicasmetalval.com |
| 214 | miacare-comfort.com |
| 215 | millsfamilyatlanta.com |
| 216 | mjsellsproperty.com |
| 217 | moranwyoming.com |
| 218 | mskadaiwala.com |
| 219 | needvacay.com |
| 220 | newglassdoors.com |
| 221 | nhljerseychinas.com |
| 221 | nhljerseyschina.com |
| 222 | nicokicks.net |
| 223 | nightbrushers.com |
| 224 | nikkiforrrisd.com |

| 225 | nitro-highschool.com |
|-----|----------------------|
| 226 | njdiamondexchange.com |
| 227 | nteciv.com |
| 228 | ochucheumuodutown.com |
| 229 | onglement-votre.com |
| 230 | onyadisticaret.com |
| 231 | ostlersofworcester.co.uk |
| 231 | royalmagick.com |
| 232 | pamfowlergrace.com |
| 233 | parsaduana.com |
| 234 | pastryninjaphotography.com |
| 235 | paullambefitness.com |
| 236 | pergiwamahayati.com |
| 237 | photoshoplink.com |
| 238 | pizzeriaquaefarina.com |
| 239 | pubshoes.com |
| 240 | quantico-realestate.com |
| 241 | rafteroranch.net |
| 242 | rikkerohr.com |
| 243 | ruthlinwellness.com |
| 244 | sallyroseveare.com |
| 245 | samwhitepages.com |
| 246 | savvybase1.com |
| 247 | scarycostumesonline.com |
| 248 | scavbot.com |
| 249 | schuylerionapress.com |
| 250 | seamosrarosjuntos.com |
| 251 | shopcleats.net |
| 252 | sneakersboost.com |
| 253 | soccerkitfr.com |
| 254 | softwaretutor.co.uk |
| 255 | soundpointresort.com |
| 256 | ssr-properties.com |
| 257 | stevenmcknightguitar.com |
| 258 | sujikeshi.com |
| 259 | sumacase.com |
| 260 | tartofruits.com |
| 261 | tayfunkara.com |
| 262 | teakwoodministries.com |
| 263 | theinsulationsite.com |
| 264 | tombowkerphotography.com |
| 265 | toproofingsite.com |
| 266 | unavenirpourlagrece.com |

| 267 | vasilmoskov.com |
|-----|-----------------|
| 268 | vatan-elektronik.com |
| 269 | visualkeiradio.com |
| 270 | wholesaleauthenticjerseysforcheap.com |
| 271 | wilgalvezphotography.com |
| 272 | yeezy350wholesale.com |
| 273 | yeezyboost700.us |
| 274 | yeezybooststock.com |
| 275 | yeezyboostus.us |
| 276 | yeezyclay.us |
| 277 | yeezy-factory.com |
| 278 | yeezyfactory.store |
| 279 | yeezygo.store |
| 279 | yeezysun.club |
| 279 | yeezysun.store |
| 280 | yeezyhyperspace.us |
| 281 | yeezy-official.com |
| 282 | yeezyop.club |
| 283 | yeezyshoes.ca |
| 284 | yeezyshoesus.com |
| 285 | yeezysitoufficiale.com |
| 286 | yeezy-supreme.com |
| 287 | yeezysus.us |
| 288 | zaneartz.com |

## SCHEDULE "B"
## ADIDAS'S FEDERALLY REGISTERED TRADEMARKS

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| ADIDAS | 0,891,222 | May 19, 1970 | IC25 - sport shoes namely, track and field shoes, baseball, boxing, football, skating, golf, and soccer shoes; sportswear namely, suits, shorts, pants, tights, shirts, gloves, and the like; jerseys; socks; sport shoes namely, track and field training shoes, basketball shoes, and tennis shoes. |
|  | 0,973,161 | November 20, 1973 | IC 18 - tote bags.<br>IC 25 - specific purpose athletic shoes, general purpose sport shoes, sports wear-namely, suits, shorts, pants, tights, shirts, jerseys, socks, and gloves. |
| adidas | 1,300,627 | October 16, 1984 | IC 025 - Sportswear-Namely, Suits, Shorts, Pants, Tights, Shirts, Jerseys, Socks, Gloves, Jackets, Coats, Swimwear, Sweaters, Caps, Pullovers, Warm-Up Suits, Boots, Shoes, Slippers. |
|  | 1,310,140 | December 18, 1984 | IC 025 - Sportswear-Namely, Suits, Shorts, Pants, Tights, Shirts, Jerseys, Socks, Gloves, Jackets, Coats, Swimwear, Sweaters, Caps, Pullovers, Warm-Up Suits, Rain Suits, Ski Suits, Jump Suits, Boots, Shoes, Slippers. |
|  | 2,411,802 | December 12, 2000 | IC 018 - All purpose sport bags, athletic bags, traveling bags, backpacks, knapsacks.<br>IC 025 - Sports and leisure wear, namely, shorts, pants, shirts, T-shirts, jerseys, socks, gloves, jackets, swimwear, caps and hats, pullovers, sweat-shirts, sweat suits, track suits, warm-up suits, boots, sandals, specific purpose athletic shoes and general all purpose sports shoes.<br>IC 028 - Sports balls and playground balls; guards for athletic use, namely, shin guards, knee guards and leg guards. |

| | | | |
|---|---|---|---|
| **adidas** | 2,651,325 | November 19, 2002 | IC 009 - Eyeglasses, sunglasses, eyeglass cases, frames for prescription glasses; and electronic calorie counters. |
| (trefoil logo) | 3,104,117 | June 13, 2006 | IC 009 - Optical apparatus and instruments, namely, eyeglasses and sunglasses.<br>IC 014 - Horological and chronometric instruments, namely, watches.<br>IC 018 - Leather and imitations of leather, and goods made from these materials in the nature of bags for general and sport use, namely, handbags, tote bags, waist packs, overnight bags, backpacks, knapsacks and beach bags; trunks; traveling bags for general and sport use; leather and imitations of leather and goods made from these materials, namely, wallets, briefcases.<br>IC 025 - Sports and leisure wear, namely suits, shorts, pants, sweatpants, skirts, skorts, dresses, blouses, shirts, T-shirts, sleeveless tops, polo shirts, vests, jerseys, sweaters, sweatshirts, pullovers, coats, jackets, track suits, training suits, warm-up suits, swimwear, underwear, socks, gloves, scarves, wristbands and belts; headgear, namely caps, hats, visors, headbands; athletic footwear and leisure foot wear, namely boots, sandals, specific purpose athletic shoes and general purpose sports shoes. |
| **adidas** | 4,679,762 | January 27, 2015 | IC 009. Mobile phone covers; laptop covers and sleeves; protective covers and sleeves for tablet computer. |
| (trefoil logo) | 4,679,763 | January 27, 2015 | IC 009. Mobile phone covers; laptop covers and sleeves; protective covers and sleeves for tablet computer. |

**SCHEDULE "C"**
**REEBOK'S FEDERALLY REGISTERED TRADEMARKS**

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| REEBOK | 1,133,704 | April 22, 1980 | IC 25. Shoes for use in athletic sports. |
|  | 1,356,835 | August 27, 1985 | IC 025. Shoes and running suits comprising jackets and pants |
| REEBOK | 1,390,793 | April 22, 1986 | IC 018. All purpose sport bags IC 25. Sweatpants, shorts, sweaters, polo shirts, hats, visors, headbands, sweatbands, t-shirts, sweatshirts. |
|  | 1,848,848 | August 9, 1994 | IC 018. All purpose sport bags, duffel bags. IC 025. Footwear and apparel; namely, T-shirts, shirts, sweatshirts, sweaters, jackets, hats, visors, socks, sweatpants, pants, shorts, skirts, unitards, and leotards. |
|  | 4,092,269 | January 24, 2012 | IC 025. Footwear; apparel, namely, shirts, tops, jackets, pants, shorts, athletic uniforms, socks, tights, gloves and, bras; headwear, namely, caps, hats and head bands. IC 041. Consulting services in the fields of fitness and exercise; physical fitness and exercise training services; providing physical fitness and exercise instruction; entertainment in the nature of competitions in the field of weightlifting, cross-training, and overall physical fitness; organizing physical fitness competitions; providing motivational speakers and personal appearances by athletes and physical fitness experts; health and fitness club services, namely, providing instruction, facilities, and equipment in the field of physical exercise; organizing and conducting classes, seminars, and workshops in the field of fitness |